Alexander M. Medina (SBN 222015)
alex@medinamckelvey.com
Kyle W. Owen (SBN 326335)
kyle@medinamckelvey.com
MEDINA McKELVEY LLP
925 Highland Pointe Drive, Suite 300
Roseville, California 95678
Telephone: (916) 960-2211
Facsimile:  (916) 742-5488

Douglas A. Robinson (MO Bar No. 58304)
drobinson@harnessip.com
(*pro hac vice forthcoming*)
Bryan K. Wheelock (MO Bar No. 32571)
bkwheelock@harnessip.com
(*pro hac vice forthcoming*)
HARNESS, DICKEY & PIERCE, P.L.C.
7700 Bonhomme, Suite 400
Clayton, Missouri 63105
Telephone: (314) 726-7500

Attorneys for plaintiff
PERIMETER SOLUTIONS L.P.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERIMETER SOLUTIONS L.P.,<br><br>    Plaintiff,<br>  v.<br><br>FORTRESS NORTH AMERICA, L.L.C.; and DOES 1 through 10,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION**<br><br>**DEMAND FOR JURY TRIAL** |

-1-
COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

# COMPLAINT

Plaintiff Perimeter Solutions (hereinafter "Perimeter Solutions") for its Complaint against defendant Fortress North America ("Fortress") alleges as follows:

## NATURE OF THE CASE

1. This is an action for trade secrets misappropriation. Fortress has hired Thomas Davis ("Davis"), Perimeter Solutions' former Vice President of Operations, as Fortress's Chief Manufacturing and Supply Chain Officer. While Davis worked for Perimeter Solutions, he had access to trade secrets owned by Perimeter Solutions, including all details concerning the formulation and manufacture of Perimeter Solutions' PHOS-CHEK® line of phosphate-based aerial fire retardant systems, as well as details of all vendors and suppliers used by Perimeter Solutions.

2. Prior to Davis's employment with Fortress, Fortress never offered a phosphate-based fire retardant system. Indeed, for years Fortress denigrated the phosphate-based fire retardant systems as environmentally unfriendly, corrosive, and ineffective.

3. Now, thanks to Davis's knowledge of Perimeter Solutions' trade secrets, Fortress has for the first time formulated a phosphate-based fire retardant system, which Fortress is attempting to have in the process for seeing approval for government purchase by the U.S. Forest Service.

4. Over many decades, other companies have tried to create phosphate-based fire retardant systems, but have failed because of technical challenges that only Perimeter Solutions has been able to overcome.

5. The process for qualifying an aerial retardant for use by the U.S. Forest Service is long and arduous.

6. The fact that Fortress has developed a phosphate-based fire retardant system and already begun discussions with the U.S. Forest Service in such a short time, combined with its contemporaneous access to Davis's knowledge of Perimeter Solutions' trade secrets, is a strong indication that Fortress has misappropriated Perimeter Solutions' trade secrets.

7. In this action, Perimeter Solutions seeks, inter alia, damages and injunctive relief to prevent Fortress's continued misappropriation of Perimeter Solutions' trade secrets.



-2-
COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

**THE PARTIES**

8. Perimeter Solutions is a limited partnership organized under the laws of Delaware with a principal place of business and headquarters at 8000 Maryland Avenue, Suite 350, Clayton, Missouri 63105.

9. Perimeter Solutions provides fire retardant products and related services. A significant part of Perimeter Solutions' business is the creation and sale of phosphate-based fire retardants that are dispersed aerially from aircraft to fight wildfires.

10. On information and belief, Fortress is organized under the laws of Delaware and has a principal place of business at 4220 Duluth Avenue, Suite A, Rocklin, California 95765.

**JURISDICTION AND VENUE**

11. This Court has general personal jurisdiction over Fortress because Fortress resides in California and in this judicial district by virtue of having a principal place of business in Rocklin, California.

12. This Court has subject matter jurisdiction over Perimeter Solutions' Defend Trade Secrets Act claim pursuant to 18 U.S.C. § 1836(b)(1) and 28 U.S.C. § 1331 (federal question jurisdiction). The Court has supplemental subject matter jurisdiction over Perimeter Solutions' state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because Fortress resides in this judicial district.

**FACTUAL BACKGROUND**

**The Market for Aerial Fire Retardant Solutions**

14. Aerial fire retardant systems are chemical formulations that are dispersed from specialized aircraft to fight wildfires, most commonly in the western United States.

15. Dispersal of aerial fire retardant systems is overseen by the U.S. Department of Agriculture's Forest Service. The Forest Service's National Technology and Development Program approves products for use as aerial fire retardant systems.

///

///



16. Generally, sales of aerial fire retardant systems are based on government contracts. A product must be approved by the U.S. Forest Service's National Technology and Development Program before it can be purchased by the government for use as an aerial fire retardant system.

17. Approval from the U.S. Forest Services is important to selling the product to state governments and to other countries.

18. The process for getting a product added to the U.S. Forest Service Qualified Product List ("QPL") is a long and complicated process.  In some instances, decades have passed in between aerial retardants being added to the QPL.

19. Government contracts for the purchase of aerial fire retardant systems involve significant amounts of money.  This incentives companies to obtain approval for aerial fire retardant systems.

**Perimeter Solutions' Fire Retardant Systems**

20. Perimeter Solutions offers the most comprehensive set of fire retardant solutions on the market, featuring technology development, products, services, training, and equipment.

21. Perimeter Solutions has decades of expertise in phosphate chemistry.  Perimeter Solutions' PHOS-CHEK® fire retardants are phosphate-based.  They help slow, stop, and prevent the start of wildfires by making wildland fuels non-flammable.  For more than 60 years, the people of Perimeter Solutions have been technology leaders in the arena of long-term fire retardants developed for a range of applications.

22. Aerial retardants are applied via fixed or rotary wing aircraft.  PHOS-CHEK® fire retardants are also applied from the ground in active fire settings, in conjunction with prescribed burns or as a preventive measure well in advance of any fire situation.  All Perimeter Solutions products have a high level of fire retardant effectiveness, with differences in visibility, viscosity, adherence to vegetation, and weather resistance.

23. PHOS-CHEK® fire retardants are fully qualified by the USDA Forest Service under federal Forest Service Specification requirements.  They are the safest, most effective, and environmentally friendly products available.  Long-term retardants are offered in red iron oxide,

///



-4-
COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

fugitive (disappearing) color, and uncolored. Products are available in medium and low viscosity, and as powder and liquid concentrates.

24. Among the products in Perimeter Solutions' PHOS-CHEK® line of products is PHOS-CHEK® MVP-Fx.

25. PHOS-CHEK® MVP-Fx long-term retardant is qualified by the USDA Forest Service under federal Forest Service Specification requirements for use in fixed wing air tankers and helicopters with buckets. It is an all-phosphate, gum-thickened, fugitive colored retardant. It is a highly effective long-term retardant with a higher yield than any other retardant on the market.

26. PHOS-CHEK® MVP-Fx is a powder concentrate that mixes readily with water by agitation or by the PHOS-CHEK® eductor-mixing systems. It is an ultra-highly visible, fugitive color retardant that provides superior visibility in the air and on the ground. It slowly fades during exposure to sunlight.

27. PHOS-CHEK® MVP-Fx is a gum-thickened, medium viscosity retardant that provides highly effective and accurate aerial drops from all air tankers. The elastic nature of PHOS-CHEK® MVP-Fx solution improves aerial delivery performance by reducing drift and evaporation, and increases coverage, wrap around, and penetration through canopy and ladder fuels.

28. PHOS-CHEK® MVP-Fx fire retardant is ideal for use in multi-engine air tankers, Very Large Air Tankers (VLATs), Large Air Tankers (LATs), and Single Engine Air Tankers (SEATS) and can be accurately dropped at higher drop heights.

29. PHOS-CHEK® fire retardants are the only phosphate-based aerial fire retardant system approved by the U.S. Forest Service's National Technology and Development Program.

30. Phosphate-based aerial fire retardant systems are superior to other types of aerial fire retardant systems. Studies have shown that phosphates provide the most effective fire retardant chemistry currently available. Phosphates are effective at stopping both flaming and glowing combustion. In addition, Perimeter Solutions' phosphate-based fire retardant systems are safe for people, aircraft, and the environment.

31. Other companies have tried for over ten years—and failed—to formulate phosphate-based aerial fire retardant systems. Those efforts have failed to succeed because the technical



1  hurdles that Perimeter Solutions has overcome, and Perimeter Solutions' knowledge of how to overcome those hurdles is included in Perimeter Solutions' trade secrets information that is the subject of this suit.

32. The companies that have tried and failed to create a commercial phosphate-based aerial fire retardant system include companies that had substantial prior experience in phosphate chemistry.

33. In Perimeter Solutions' experience, even minor changes to the formulation of a phosphate-based aerial retardant system can have significant impacts on the performance and corrosive properties of the product, and these differences can be critical to whether a formulation passes or fails the qualification requirements.

34. Perimeter Solutions' Safety Data Sheets withhold certain information concerning the chemical name, CAS number and/or exact concentration of certain chemicals in its formulations because that information constitutes trade secrets. *See, e.g.,* Exh. A.

35. Perimeter Solution's trade secret information includes the formulations for phosphate-based fire retardants, the production and blending processes, demand planning, distribution channels, vendors, and suppliers from whom Perimeter Solutions purchases materials and services, and the raw material specifications which are crucial to the retardant's performance ("Perimeter Solutions' Trade Secrets").

36. Further, even slight changes to Perimeter Solutions' formulations require years of work and testing before they are approved by the U.S. Forest Service.

**Davis's Knowledge of Perimeter Solutions Trade Secrets**

37. From June 11, 2018 until January 8, 2021, Davis was Perimeter Solutions' Vice President of Operations. In that position, Davis had responsibility for, and access to, all aspects of the design, formulation, and manufacture of Perimeter Solutions' PHOS-CHEK® products.

38. Davis was provided with the specific formulations for the PHOS-CHEK® products that were used each season. Davis also had knowledge of the components and suppliers for the components of Perimeter Solutions' products.

///



-6-
COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

39. Davis also had access to Certificates of Analysis and other testing conducted by Perimeter Solutions to ensure that its products were consistent with the products' specifications.

40. Davis also had access to all information concerning the manufacturing process for PHOS-CHEK® products including the identity of the third-party engineer who built the manufacturing line for Perimeter Solutions for the manufacture of PHOS-CHECK® products.

41. Davis's employment with Perimeter Solutions was contingent on his agreement to a Confidentiality, Invention, and Non-Solicitation Agreement ("Confidentiality Agreement"), attached as Exhibit A, which he entered into with Perimeter Solutions on June 11, 2018.

42. Davis's Confidentiality Agreement stated that Davis would learn Perimeter Solutions' trade secrets, and he agreed to keep those trade secrets confidential. Specifically, the Confidentiality Agreement stated as follows:

> I acknowledge that as a result of my employment by the Company, I may obtain or learn about Trade Secrets or Confidential Information, as defined below, that are the property of the Company, or that the Company is under obligation not to disclose to others. I understand that absent this Agreement, I would not have access to Trade Secrets or Confidential Information. I will use my best efforts and utmost diligence to safeguard and protect such Trade Secrets and Confidential Information. Both during and after my period of employment, I will not use or divulge to others any such Trade Secrets or Confidential Information, except as required in the performance of the regular duties for the Company by the me, unless authorized to do so in writing by the Company entity that employs me or as otherwise permitted under this Agreement. I will use good security practices in protecting Trade Secrets and Confidential Information, and will keep such information secure from outside visitors and all other persons (including, but not limited to, other the Company personnel) who do not have a legitimate reason to acquire or use such information.

Exh. A at II.(a).

43. The Confidentiality Agreement further included the following definitions of Confidential Information and Trade Secrets:

> For purposes of this Agreement, "Confidential Information" includes but is not limited to information, whether in written, oral, electronic or visual form, relating to the Company's patentable and non-patentable processes, methods, machines, equipment, materials, formulations, ingredients, techniques, computer programs and systems, product research, development and design, discoveries, inventions, improvements, customer lists and customer



> requirements, business or strategic plans, marketing plans and data, pricing data, financial data, potential mergers and acquisitions or similar transactions, personnel files, and information of any nature that gives the Company an opportunity to obtain an advantage over its competitors who do not know or use such information; and including any memoranda, summaries, notes, analyses, compilations, studies or other documents that contain, are based upon or reflect such information. For purposes of this Agreement, the term "Trade Secrets" shall mean that portion of Confidential Information which constitutes trade secrets, as defined by applicable law, whether copyrightable or not. Notwithstanding the foregoing, the term "Confidential Information" does not include information that (i) was known to me prior to disclosure by the Company; (ii) was publicly available at the time of disclosure by the Company; (iii) subsequently becomes publicly available through no fault of me; or (iv) is rightfully acquired by me subsequent to disclosure by the Company from a third party who is not in breach of a confidential relationship with an obligation to the Company with regard to such information. To the extent Confidential Information or a Trade Secret is required to be disclosed by law, a court, or a governmental agency, I shall immediately give the Company written notice of such requirement to disclose (unless such written notice is not required pursuant to provisions of this Agreement), and fully cooperate with the Company's efforts to obtain a protective order or other relief.

Exh. A at II(b).  This information is included in Perimeter Solutions' Trade Secrets, defined above.

44. Davis's employment with Perimeter Solutions ended on January 8, 2021, based on an "Agreement to Release All Claims" ("Release Agreement") between Davis and Perimeter Solutions.  The Release Agreement is filed conditionally under seal with this Complaint as Exhibit B.

45. In the Release Agreement, Davis confirmed his agreement to not reveal Perimeter Solutions' Confidential Information. The Release Agreement stated as follows:

> **<u>Continued Protection of Confidential Information.</u>** By virtue of my prior employment relationship with the Company Parties, I have developed and/or acquired Confidential Information (as defined below) of the Company in which the Company Parties have a legally protectable interest. I acknowledge that the Company Parties would suffer great loss and damage if I were to improperly use or disclose Confidential Information. Accordingly, I agree that I will never disclose to any third party not employed or engaged by the Company Parties any Confidential Information and will never use any Confidential Information except for the Company Parties' benefit. As used in this Agreement, the term "Confidential Information" means any and all trade secrets and/or confidential, financial or business information of the Company Parties,



> including, but not limited to, (i) names, addresses, phone numbers, financial and other information concerning any customer of the Company; (ii) prices charged customers, and (iii) rates, price and quotation techniques and methods, costs, sales volumes, profits, margins, financial and marketing plans, strategies and projections, business methods, forms, procedures and marketing strategies; and (iv) manufacturing processes and procedures. I acknowledge the restrictions contained in this paragraph are reasonable and necessary for the protection of the Company Parties' business and its legitimate and protectable interests and are compatible with the parties' respective rights. The obligations regarding confidential information contained herein are in addition to, not in lieu of, any obligations I may have concerning confidential information as a result of any prior agreement I have with any of the Company Parties.

Exh. B at ¶11.

46. Davis further agreed that the existing Confidentiality Agreement remained in effect and was not superseded by the Release Agreement:

> **Confidentiality, Invention and Non-Solicitation Agreement.** The Employee is party to the Confidentiality, Invention and Non-Solicitation Agreement, attached hereto as Exhibit B. Such agreement shall remain in effect and this Agreement shall not supersede its terms.

Exh. B at ¶16.

**Fortress's Hiring of Davis**

47. On Monday, January 10, 2022, Fortress North America, LLC announced that it had hired Davis in the "vital role of Chief Manufacturing and Supply Chain Officer." Exhibit C (Press Release). That hiring date was the first business day following the expiration of the Non-Solicitation provisions of Davis's agreement with Perimeter Solutions.

48. In a press release, Fortress touted Davis's experience in the fire retardant chemicals industry—experience that Davis obtained through employment at Perimeter Solutions. Fortress stated, "Davis brings over 30 years of direct experience in the chemical industry, having held numerous leadership positions at several top tier chemical companies. He is uniquely qualified in this capacity, with decades of experience and one of a handful of individuals with his level of hands-on knowledge in the wildland and aerial long-term fire retardant chemicals industry."

Exh. C.

///



49. Fortress's press release further touted Davis's experience with Perimeter Solutions: "Most recently, Davis spent eight years with Perimeter Solutions (PRM: NYSE) where he led global operations and supply chain for ICL's Fire Safety business unit (now Perimeter Solutions) and was one of a four-member team to lead the sale of the ICL business unit to SK Capital in 2018, which resulted in the creation of Perimeter Solutions. From an operating perspective, Davis was responsible for building the global operations and supply chain organizations to establish Perimeter as a stand-alone company."

Exh. C.

50. Fortress's press release quoted Fortress's CEO as stating, "Tom is a rare find in this highly specialized industry. His background and hands-on operating knowledge, along with his personal drive to build better ways of doing things, is perfectly aligned with Fortress' core mission and overriding vision. We are proud to welcome Tom to our leadership team."

Exh. C.

51. On January 14, 2022, Perimeter Solutions sent a letter to Fortress explaining Davis's obligation not to "provide Fortress, or any other entity, with and Confidential Information (as defined in the Confidentiality Agreement and in the Release Agreement) nor to use such information for Fortress's benefit." Exh. D. The letter to Fortress further stated, "Moreover, it would be wrongful for Fortress North America to request, receive, or use any such information provided by Mr. Davis." Exh. D. Perimeter Solutions never received a response to that letter.

**Fortress's History with Aerial Fire Retardant Systems**

52. On information and belief, Fortress was founded in 2014, and has been attempting to develop a magnesium chloride fire retardant.

53. Fortress and its parent Compass Minerals are heavily invested in its magnesium chloride fire retardants.

54. Fortress had a single significant customer for its aerial magnesium chloride fire retardants—the U.S. Forest Service.

55. On information and belief, Fortress and its parent Compass Minerals have been aware of issues with Fortress's magnesium chloride fire retardants for some time.



COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

56. On information and belief, motivated by concerns about the issues with its major product, and its single significant customer, Fortress and its parent Compass Minerals were under pressure to find a replacement product.

57. In May 2021, a Fortress magnesium chloride fire retardant was conditionally qualified on the U.S. Forest Service's Qualified Product list, and 200,000 gallons were tested using air tankers in Missoula, Montana.

58. On July 12, 2021, the presidents of three air tanker companies wrote to the Chief of the Forest Service, expressing concern about the corrosive impact of Fortress's product on air tankers, noting that it is widely reported that magnesium chloride can cause significant damage.

59. The potential for corrosion of the magnesium chloride in its fire retardant was well known to Fortress in 2021, and Fortress had a team of scientists working to address corrosion caused by magnesium chloride in their fire retardant.

60. Despite the concerns, in December 2022, Fortress became the first new company in over twenty years to have a long-term aerial fire retardant added to the QPL.  Exh. E.

61. In 2023, trials of Fortress's magnesium chloride fire retardant continued.

62. During scheduled winter air tanker inspections as a part of the U.S. Forest Service's Integrated Operation Field Evaluation (I-OFE), it was discovered that Fortress' magnesium chloride based retardants had caused significant corrosion in air tankers.  Exh. E.

63. After the discovery of corrosion in areas of the large air tankers where Fortress's magnesium chloride fire retardant accumulated during the 2023 trials, the U.S. Forest Service decided not to continue its use in 2024, reverting to Perimeter Solutions' phosphate fire retardant that has been successfully used for many years.

64. On March 22, 2024, the U.S. Forest Service informed Fortress that it was unable to offer Fortress a contract due to the safety concerns caused by Fortress' magnesium chloride based retardants.  Exh. E.  Fortress has further indicated that its "magnesium chloride-based aerial fire-retardant formulation will not be utilized for the foreseeable future in the fight against wildfires."  Exh. E.

///

65. Two large air tankers used in the 2023 trials have been grounded because of corrosion apparently caused by Fortress's magnesium chloride fire retardant, pending a joint investigation by the National Transportation Safety Board, the National Institute of Standards and Technology and the Forest Service.

66. On March 25, 2024, Fortress's parent company, Compass Minerals, admitted that "[t]he company is currently working to achieve full qualification of proprietary, non-magnesium chloride-based aerial fire-retardant products." Exh. E.

**Fortress's Plan B**

67. On information and belief, it was clear to Fortress in early 2021, if not before, that a plan B was needed in case the corrosion caused by magnesium chloride could not be successfully addressed.

68. On information and belief, Fortress's plan B was simply to copy Perimeter's Solutions' phosphate based fire retardant.

69. On January 10, 2022, the first business day after the restrictions on his employment ended, Fortress announced the hiring of Thomas Davis.

70. Fortress was well aware of Davis's past employment with Perimeter Solutions, noting that employment in the press release announcing his hiring, and particularly noting his "hands-on knowledge in the wildland and aerial long-term fire retardant chemicals industry" from his employment by Perimeter Solutions. Exh. C.

71. Shortly after the announcement of Davis's hiring, Perimeter Solutions sent a warning to Fortress that Davis had access to Perimeter Solutions' Confidential Information and Trade Secrets. Exh. D.

72. After joining Fortress, Davis contacted the engineer that helped design Perimeter Solutions' production line for its PHOS-CHEK® products.

73. On information and belief, Davis has used other Confidential Information and Trade Secrets of Perimeter Solutions, or it is inevitable that he will use other Confidential Information of Perimeter Solutions, as Fortress tries to find a substitute fire retardant product for its primary customer.



-12-
COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

74. As of January 5, 2024, Fortress's "Fortress Qela" product was "Interim Qualified" under Forest Service Specification 5100-304d. Exh. F. The "Interim Qualified" designation means that the "Product complies with all interim requirements in Appendix A of the specification; final results and a field evaluation is required for full qualification." Exh. F.

75. Based on Perimeter Solutions' experience with formulating and manufacturing phosphate-based aerial fire retardant systems, the failure of others to successfully formulate such products, the difficulty of getting a product added to the QPL, Fortress's own admission that it is developing a non-magnesium chloride based retardant, and Davis's knowledge of phosphate-based aerial fire retardant systems acquired from Perimeter Solutions, Perimeter Solutions believes that Davis has provided Perimeter Solutions' Trade Secrets to allow his new employer, Fortress, to shortcut the development process for a phosphate-based aerial fire retardant system.

76. On information and belief, based on the timeline for qualifying a product for the QPL, Fortress's development of its new non-magnesium chloride based retardant likely started at or around the same time that Davis was hired by Fortress.

**CLAIM I**

**VIOLATION OF THE DEFEND TRADE SECRETS ACT**

77. Perimeter Solutions repeats and realleges the foregoing paragraphs as though fully set forth herein.

78. Perimeter Solutions has invested significant time and resources in the development of formulations for phosphate-based fire retardants, and the process of making them.

79. Perimeter Solutions has marketed and sold its phosphate-based fire retardants in interstate commerce.

80. Perimeter Solutions has taken steps, reasonable under the circumstances, to maintain the secrecy of the formulations for phosphate-based fire retardants, and the process of making them, including having employees like Davis who have access to the formulation sign confidentiality agreements.

81. Perimeter Solutions' formulations for, and process of making, phosphate-based fire retardants are not generally known, nor are they readily ascertainable by proper means.



82. Perimeter Solutions' Trade Secrets derive independent economic value from not being generally known, and not being readily ascertainable by proper means, as these trade secrets relate to existing commercial first retardant products of Perimeter Solutions, for which there is a competitive market.

83. Perimeter Solutions' Trade Secrets constitute a trade secret under the Defend Trade Secrets Act, 18 USC § 1839(3).

84. On information and belief Fortress has misappropriated Perimeter Solutions' Trade Secrets as set forth in 18 USC § 1839(5)(B)(ii)(III) by using it while knowing or having reason to know that it was derived from or through a person (Davis) who owned a duty to Perimeter Solutions to maintain the secrecy of Perimeter's Trade Secrets, or limit the use of Perimeter Solutions' Trade Secrets.

85. On information and belief, Fortress received Perimeter Solutions' Trade Secrets from Davis, and has used Perimeter Solutions' Trade Secrets in the manufacture and sale of products to compete with Perimeter Solutions' products.

86. On information and belief, Perimeter Solutions has been damaged by Fortress's misappropriation of Perimeter Solutions' Trade Secrets, and will continue to be damaged as a result of Fortress' misappropriation of Perimeter Solutions' Trade Secrets unless enjoined by this Court.

87. Perimeter has no adequate remedy at law.

88. On information and belief, Fortress's misappropriation, coming after receiving the letter from Perimeter Solutions (Exh. D), is willful and malicious under 18 USC § 1836(3)(C)).

## CLAIM II

## VIOLATION OF THE MISSOURI AND CALIFORNIA

## UNIFORM TRADE SECRETS ACT

89. Perimeter Solutions repeats and realleges the foregoing paragraphs as though fully set forth herein.

90. Davis had knowledge of Perimeter Solutions' Confidential Information and Trade Secrets, the disclosure and misappropriation of which poses a significant threat to Perimeter Solutions' ongoing business including at its Missouri headquarters.



-14-

COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL

91. Perimeter Solutions has invested significant time and resources in the development of formulations for phosphate-based fire retardants, and the process of making them.

92. Perimeter Solutions requires employees, who have access to trade secrets, confidential, sensitive, and proprietary information, sign confidentiality agreements. Perimeter Solutions has taken this and other steps, reasonable under the circumstances, to maintain the secrecy of Perimeter Solutions' Trade Secrets, as defined above.

93. Perimeter Solutions' Trade Secrets are not generally known, nor are they readily ascertainable by proper means.

94. Perimeter Solutions' Trade Secrets derive independent economic value from not being generally known, and not being readily ascertainable by proper means, as these trade secrets relate existing commercial fire retardant products of Perimeter Solutions, for which there is a competitive market.

95. Perimeter Solutions' Trade Secrets constitute a trade secret under the Missouri and California Uniform Trade Secrets Acts, Mo.Rev.Stat. 417.450, and Cal. Civ. Code section 3426.1.

96. On information and belief, Fortress has misappropriated Perimeter Solutions' Trade Secrets as set forth in Mo.Rev.Stat. 417.453 and Cal. Civ. Code section 3426.1, inter alia, by receiving them from Davis while knowing or having reason to know that it was derived from or through a person (Davis) who owed a duty to Perimeter Solutions to maintain the secrecy of Perimeter Solutions' trade secrets, or limit the use of Perimeter Solutions' Trade Secrets.

97. On information and belief, Fortress and Davis have used Perimeter Solutions' Trade Secrets in the manufacture and sale of products to compete with Perimeter's products, including providing samples of products based upon or otherwise using Perimeter Solutions' Trade Secrets to the U.S. Forest Service.

98. On information and belief, Perimeter Solutions has been damaged by Fortress's misappropriation of Perimeter Solutions' Trade Secrets, and will continued to be damaged as a result of Fortress's misappropriation of Perimeter Solutions' Trade Secrets, unless enjoined by this Court.

99. Perimeter Solutions has no adequate remedy at law.


100.   On information and belief, Fortress' misappropriation is outrageous under Mo.Rev.Stat. 417.457(2), and willful and malicious under Cal. Civ. Code section 3426.3(c).

**PRAYER FOR RELIEF**

WHEREFORE, Perimeter Solutions respectfully requests the Court to enter judgment for it and against Fortress as follows:

1. Entering judgment in Perimeter Solutions' favor and finding that:

    a. Fortress breached one or more provisions of the Confidentiality, Invention, and Non-Solicitation Agreement between Davis and Perimeter Solutions;

    b. Fortress has misappropriated Perimeter Solutions' Trade Secrets in violation of the Defend Trade Secrets Act;

    c. Fortress has misappropriated Perimeter Solutions' trade secrets in violation of the Missouri and California Uniform Trade Secrets Acts; and

    d. Fortress has been unjustly enriched through the disclosure, use, and misappropriation of Perimeter Solutions' trade secrets and confidential information.

2. Awarding Perimeter Solutions its actual damages, lost profits, punitive damages, or exemplary damages; amount of any unjust enrichment enjoyed by Fortress; loss in value to any Perimeter Solutions trade secrets, confidential information, or other assets that were destroyed or damaged as a result of Fortress's conduct.

3. Permanently enjoining Fortress to prevent further actual and threatened misappropriation and misuse of Perimeter Solutions' trade secrets and confidential information.

4. Ordering the destruction of any material that was developed with the assistance of, or otherwise incorporates, Perimeter Solutions' trade secrets or confidential information.

5. Finding that Fortress's conduct was willful and egregious and award Perimeter Solutions exemplary damages under the Defend Trade Secrets Act and/or the Missouri and California Uniform Trade Secrets Acts.

6. Awarding Perimeter Solutions its attorneys' fees under the Defend Trade Secrets Act, and the California Uniform Trade Secrets Act.

///



7. Awarding Perimeter Solutions costs, prejudgment interest, and post judgment interest.

8. Granting Perimeter Solutions such other and further relief as the Court may deem just and appropriate.

**JURY TRIAL DEMANDED**

Perimeter Solutions demands a jury trial.

Dated: May 1, 2024                             MEDINA McKELVEY LLP

By: /s/ *Alexander M. Medina*
ALEXANDER M. MEDINA
KYLE W. OWEN
Attorneys for plaintiff PERIMETER SOLUTIONS L.P.



COMPLAINT FOR TRADE SECRETS MISAPPROPRIATION; DEMAND FOR JURY TRIAL