1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PERIMETER SOLUTIONS L.P.,                    No.  2:24-cv-01276-DAD-CSK

12                  Plaintiff,

13         v.                                      ORDER GRANTING DEFENDANT'S
                                                   MOTION TO DISMISS
14   FORTRESS NORTH AMERICA, L.L.C.,
                                                   (Doc. No. 19)
15                  Defendant.

16

17        This matter is before the court on the motion to dismiss filed on behalf of defendant

18   Fortress North America, L.L.C. ("Fortress") on June 25, 2024.  (Doc. No. 19.)  On July 17, 2024,

19   the pending motion was taken under submission to be decided on the papers pursuant to Local

20   Rule 230(g).  (Doc. No. 26.)  For the reasons explained below, the court will grant defendant's

21   motion to dismiss, with leave to amend.

22                                    **BACKGROUND**

23        Plaintiff Perimeter Solutions L.P. ("Perimeter Solutions") brings this action alleging

24   violations of trade secret laws against defendant Fortress.  (Doc. No. 1.)  Plaintiff alleges the

25   following in its complaint.

26        Generally, sales of aerial fire retardant systems are based on government contracts, for

27   which there is a competitive market.  (Doc. No. 1 at ¶¶ 16, 82.)  These government contracts

28   involve significant amounts of money.  (*Id.* at ¶ 19.)  An aerial fire retardant must be approved by

                                              1

1    the U.S. Forest Service before it can be sold to the U.S. government, and such approval is also

2    important in selling the product to state governments and to other countries.  (*Id.* at ¶¶ 16–17.)

3    The "timeline for qualifying a product" with the U.S. Forest Service is "long and complicated."

4    (*Id.* at ¶¶ 18, 76.)  Qualification occurs in stages.  (Doc. No. 1-6 at 2.)  Interim qualification

5    means the product complies with certain requirements, but final laboratory results and a field

6    evaluation have yet to be conducted.  (*Id.*)  A product is then conditionally qualified when it

7    complies with all requirements in a laboratory evaluation, but a field evaluation has yet to be

8    conducted.  (*Id.*)  A product is fully qualified when it complies with all requirements, including in

9    a field evaluation.  (*Id.*)

10       Plaintiff produces a phosphate-based fire retardant that is fully qualified by the U.S. Forest

11   Service.  (Doc. No. 1 at ¶ 23.)  Until recently, plaintiff was the only producer of phosphate-based

12   fire retardant systems.  (*Id.* at ¶ 4.)  Plaintiff formerly employed Thomas Davis as its Vice

13   President of Operations.  (*Id.* at ¶ 37.)  In that position, Davis had responsibility for, and access

14   to, all aspects of the design, formulation, and manufacture of plaintiff's phosphate-based fire

15   retardant product.  (*Id.*)  Davis signed a confidentiality agreement, which required him to keep

16   plaintiff's trade secrets confidential.  (*Id.* at ¶ 42.)  Plaintiff requires employees who have access

17   to trade secrets, confidential, sensitive, and proprietary information to sign confidentiality

18   agreements.  (*Id.* at ¶ 92.)

19       Defendant Fortress is a company that was founded in 2014.  (*Id.* at ¶ 52.)  Defendant

20   previously worked to develop a magnesium chloride-based fire retardant, and "for years"

21   criticized phosphate-based fire retardants.  (*Id.* at ¶ 2.)  In May 2021, defendant's magnesium

22   chloride fire retardant was conditionally qualified by the U.S. Forest Service.  (*Id.* at ¶ 57.)

23   However, magnesium-based fire retardants have long experienced issues with corrosion.  (*Id.* at

24   ¶ 59.)  On January 10, 2022, defendant announced that it was hiring Davis, plaintiff's former

25   employee.  (*Id.* at ¶ 69.)  After joining defendant, Davis contacted the third-party engineer that

26   helped design plaintiff's production line.  (*Id.* at ¶ 72.)  In December 2022, defendant's

27   magnesium-based fire retardant was fully qualified by the U.S. Forest Service.  (*Id.* at ¶ 60.)  In

28   2023, trials of defendant's magnesium chloride fire retardant continued.  (Id. at ¶ 61.)  As of

1    January 5, 2024, another one of defendant's products was interim qualified with the U.S. Forest

2    Service.  (*Id.* at ¶ 74.)  On March 22, 2024, the U.S. Forest Service informed defendant that it was

3    unable to offer defendant a contract for its fully qualified magnesium chloride fire retardant due

4    to safety concerns.  (*Id.* at ¶ 64.)  On March 25, 2024, defendant's parent company announced

5    defendant was working to achieve full qualification of proprietary non-magnesium chloride-based

6    aerial fire-retardant products.  (*Id.* at ¶ 66.)

7         Based on the foregoing, plaintiff further alleges that defendant's interim qualified product

8    is a phosphate-based fire retardant.  (*Id.* at ¶ 3.)  "On information and belief, based on the timeline

9    for qualifying a product . . . , Fortress's development of its new non-magnesium chloride based

10   retardant likely started at or around the same time that Davis was hired by Fortress."  (*Id.* at ¶ 76.)

11   Given this inferred timeline, defendant developed a product similar to plaintiff's product quickly

12   when formerly plaintiff was the only company capable of developing a phosphate-based fire

13   retardant.  (*Id.* at ¶ 75.)  "Perimeter Solutions believes that Davis has provided Perimeter

14   Solutions' Trade Secrets to allow his new employer, Fortress, to shortcut the development process

15   for a phosphate-based aerial fire retardant system."  (*Id.* at ¶ 75.)  "On information and belief,

16   Davis has used other Confidential Information and Trade Secrets of Perimeter Solutions, or it is

17   inevitable that he will use other Confidential Information of Perimeter Solutions, as Fortress tries

18   to find a substitute fire retardant product for its primary customer[,]" the U.S. Forest Service.  (*Id.*

19   at ¶ 73.)

20        "Perimeter Solutions' Trade Secrets . . . includes the formulations for phosphate-based fire

21   retardants, the production and blending processes, demand planning, distribution channels,

22   vendors, and suppliers from whom Perimeter Solutions purchases materials and services, and the

23   raw material specifications which are crucial to the retardant's performance[.]"  (*Id.* at ¶ 35.)

24        Based on the foregoing allegations, plaintiff Perimeter Solutions brings three claims

25   against defendant Fortress in its complaint:  (1) violation of the federal Defend Trade Secrets Act

26   ("DTSA"); (2) violation of the Missouri Uniform Trade Secrets Acts ("MUTSA"); and (3)

27   violation of the California Uniform Trade Secrets Act ("CUTSA").  (Doc. No. 1 at ¶¶ 77–100.)

28   /////

1   On June 25, 2024, defendant filed the pending motion to dismiss plaintiff's claims

2   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and an accompanying request

3   for judicial notice. (Doc. No. 19.) Plaintiff filed an opposition to the motion on July 9, 2024.

4   (Doc. No. 23.) Defendant filed its reply thereto on July 24, 2024. (Doc. No. 27.)

5   **LEGAL STANDARD**

6   The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

7   sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

8   1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

9   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

10  F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

11  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

12  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

13  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

14  *Iqbal*, 556 U.S. 662, 678 (2009).

15  In determining whether a complaint states a claim on which relief may be granted, the

16  court accepts as true the allegations in the complaint and construes the allegations in the light

17  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,

18  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

19  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not

20  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

21  unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

22  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

23  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

24  of a cause of action, supported by mere conclusory statements, do not suffice."). It is

25  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

26  defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

27  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

28  /////

4

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

## ANALYSIS

For the reasons explained below, the court will grant defendant's request for judicial notice in part and will grant defendant's motion to dismiss plaintiff's complaint, with leave to amend.

**A.    Request for Judicial Notice**

Defendant requests that the court take judicial notice of four exhibits—three patents and one patent application. (Doc. No. 19-1 at 10 n.4; 19-2; 19-3; 19-4; 19-5.) Defendant seeks to use the three patents, exhibits 1–3, to establish that "publicly available patents have provided extensive technical information about phosphate-based fire retardants for decades[,]" and plaintiff's "own patents disclose copious amounts of technical information about phosphate-based retardants" including "purportedly novel phosphate-based fire retardant compounds and the existing phosphate-based fire retardants they allegedly improve upon[,]" and "(1) specific concentrations of phosphates and other components that Perimeter states are effective, (2) complete raw material lists and concentrations thereof, (3) methods of making the retardants, and (4) the results of detailed tests of the retardants." (Doc. No. 19-1 at 10, 14.) Defendant argues from this information that plaintiff has failed to distinguish between its trade secrets and the information publicly available in its patents. (Doc. No. 19-1 at 14.) Defendant seeks to use the patent application, exhibit 4, to establish that "before Mr. Davis started work at Fortress[,] Fortress filed a lengthy, comprehensive patent application for phosphate-based fire retardants, the contents of which show that samples of Fortress' phosphate-based retardant had already been produced and tested long before Mr. Davis arrived." (Doc. No. 19-1 at 10.) Based on this, defendant argues that it started working on its phosphate-based fire retardant before Davis started

/////

5

1    working for defendant.  (Doc. No. 19-1 at 24.)  Plaintiff disputes the import of all four exhibits.

2    (Doc. No. 23 at 13 & n.3.)

3          "A court may take judicial notice of matters of public record without converting a motion

4    to dismiss into a motion for summary judgment."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

5    988, 999 (9th Cir. 2018) (citation omitted).  "But a court cannot take judicial notice of disputed

6    facts contained in such public records."  *Id.* (citation omitted).

7          As to all four exhibits, the court takes judicial notice "that the information exists and is

8    available to the public."  *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, No. 19-cv-00220-JVS-JDE,

9    2019 WL 4282906, at *1 (C.D. Cal. June 3, 2019) ("[P]atents are matter[s] of public record and

10   the proper subject of judicial notice[,]" but "the Court does not take judicial notice that Plaintiffs'

11   alleged trade secrets were publicly disclosed in these documents[.]"); *see also Novation Sols., Inc.*

12   *v. Issuance Inc.*, No. 2:23-cv-00696-WLH-KS, 2023 WL 5505908, at *4 (C.D. Cal. June 27,

13   2023) ("The Court **GRANTS** Defendants' request to take notice of the content of the [patent]

14   application and the fact that it is available to the public, but it does not take notice that the

15   application disclosed DealMaker's trade secrets.").  The court also takes judicial notice of the

16   filing date of exhibit 4.  *See Khoja*, 899 F.3d at 1001 (taking judicial notice of the filing date of an

17   international patent application).

18         The court does not, however, take judicial notice that plaintiff's "alleged trade secrets

19   were publicly disclosed in" exhibits 1–3 because that issue is disputed.  *MACOM Tech. Sols.*,

20   2019 WL 4282906, at *1 ("[T]hat issue is disputed in this case, and therefore is not properly

21   subject to judicial notice; rather, the Court takes notice that the content of the [patent] is public.");

22   (Doc. No. 23 at 13) (disputing the import of exhibits 1–3).  Nor does the court take judicial notice

23   of defendant's disputed interpretation of its exhibit 4.  (Doc. No. 23 at 13 n.3.)  Evaluating

24   defendant's proposed interpretations of the patents or patent application would involve "a

25   summary judgment-like review" that the court cannot undertake on a motion to dismiss.

26   *MACOM Tech. Sols.*, 2019 WL 4282906, at *7.

27   /////

28   /////

6

1    **B.    Trade Secrets Act**

2        "California has adopted the Uniform Trade Secrets Act [ ], which codifies the basic

3    principles of common law trade secret protection." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991

4    F.2d 511, 520 (9th Cir. 1993).  "To state a claim for trade secret misappropriation under the . . .

5    CUTSA, a plaintiff must allege that:  (1) the plaintiff owned a trade secret; (2) the defendant

6    misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Emergy*

7    *Inc. v. The Better Meat Co.*, No. 2:21-cv-02417-KJM-CKD, 2022 WL 7101973, at *7 (E.D. Cal.

8    Oct. 12, 2022) (internal quotation marks and citation omitted).

9        At the federal level, the DTSA similarly permits the "owner of a trade secret that is

10    misappropriated" to bring a civil action, 18 U.S.C. § 1836(b), and includes substantially similar

11    definitions of both "trade secret" and "misappropriation," 18 U.S.C § 1839(3), (5); *see also*

12    *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).  The court can

13    therefore analyze plaintiff's California and federal trade secret claims jointly.  *InteliClear*, 978

14    F.3d at 657.  The requirements of the Missouri equivalent, MUTSA, are substantially identical to

15    the DTSA as well, and the Eighth Circuit has likewise treated DTSA and MUTSA claims as

16    standing and falling together.  *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948,

17    955 (8th Cir. 2023) ("Because [the DTSA and MUTSA] are essentially identical, we can analyze

18    the claims together.").

19    **C.    Ownership of Trade Secrets**

20        A "trade secret" is "information, including a formula, pattern, compilation, program,

21    device, method, technique, or process, that:  (1) [d]erives independent economic value, actual or

22    potential, from not being generally known to the public . . ., and (2) [i]s the subject of efforts that

23    are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3246.1(d).  In

24    other words, "'the test for a trade secret is whether the matter sought to be protected is

25    information (1) that is valuable because it is unknown to others and (2) that the owner has

26    attempted to keep secret.'" *Amgen Inc. v. Health Care Servs.*, 47 Cal. App. 5th 716, 734 (2020)

27    (quoting *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004)).  "To

28    adequately plead a trade secret, it must be described with sufficient particularity to separate it

1    from matters of general knowledge in the trade or of special knowledge of those persons who are

2    skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which

3    the secret lies." *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2015 WL

4    8028294, at *3 (N.D. Cal. Dec. 7, 2015) (citation omitted).  "The plaintiff, however, is not

5    required to define every minute detail of its claimed trade secret at the outset of the litigation."

6    *Id.* (citation omitted).

7         Defendant argues that plaintiff has failed to plead its alleged trade secrets with sufficient

8    particularity to ascertain the boundaries within which the secret purportedly lies.  (Doc. No. 19-1

9    at 12–15.)  "Perimeter Solutions' Trade Secrets" as defined in plaintiff's complaint "includes the

10   formulations for phosphate-based fire retardants, the production and blending processes, demand

11   planning, distribution channels, vendors, and suppliers from whom Perimeter Solutions purchases

12   materials and services, and the raw material specifications which are crucial to the retardant's

13   performance[.]"  (Doc. No. 1 at ¶ 35.)  Defendant argues this is "precisely the sort of 'generic list

14   of categories of various types of information' that California courts have routinely rejected as

15   insufficient at the pleading stage."  (Doc. No. 19-1 at 13) (quoting *Bladeroom*, 2015 WL

16   8028294, at *3).

17        Plaintiff responds by characterizing the alleged trade secret as "(1) a *formulation* for

18   Perimeter Solutions' PHOS-CHEK® line of phosphate-based aerial fire-retardant systems; and

19   (2) a *manufacturing process* for its PHOS-CHEK® line of phosphate-based aerial fire-retardant

20   systems[.]"  (Doc. No. 23 at 12.)  Defendant in reply argues this description constitutes an

21   impermissible departure from plaintiff's complaint.  (Doc. No. 27 at 3) (quoting *Fabbrini v. City

22   of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008)) ("Plaintiff's statements in his

23   opposition brief cannot amend the Complaint under Rule 15.").

24        The court agrees with defendant that where a "[p]laintiff attempts to . . . narrow" its

25   "definition" of the alleged trade secret "in its opposition" to the defendant's motion to dismiss,

26   the court "cannot consider" this "extrinsic evidence outside" the complaint.  *CleanFish, LLC v.

27   Sims*, No. 19-cv-03663-HSG, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020); *see also

28   Khachatryan v. Blinken*, 4 F.4th 841, 845 (9th Cir. 2021) (When ruling on a motion to dismiss,

8

1  the court considers "only allegations contained in the pleadings, exhibits attached to the

2  complaint, and matters properly subject to judicial notice.").

3        Here, the categories listed in plaintiff's complaint are too vague to define the "boundaries

4  within which the secret lies." *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

5  *Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *4 (E.D. Cal. June 1,

6  2018) (citation omitted); *see also id.* at *4 n.2 (distinguishing this analysis from the

7  "particularity" required by California Civil Procedure Code § 2019.210, which is not relevant in

8  evaluating a motion to dismiss).  Instead, plaintiff's alleged trade secrets are analogous to those

9  cases where the alleged trade secrets were found to be "more descriptive of the types of

10  information that generally *may* qualify as protectable trade secrets than as any kind of listing of

11  particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated[.]"

12  *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar.

13  23, 2018) (finding the plaintiff's purported trade secrets too "broad" where the plaintiff alleged its

14  trade secrets "include[] its source code, customer lists and customer related information, pricing

15  information, vendor lists and related information, marketing plans and strategic business

16  development initiatives, 'negative knowhow' learned through the course of research and

17  development, and other information related to the development of its price-optimization software,

18  including ideas and plans for product enhancements"); *Space Data Corp. v. X*, No. 16-cv-03260-

19  BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("[T]he FAC and Exhibits D and E

20  thereto merely provide a high-level overview of Space Data's purported trade secrets, such as

21  'data on the environment in the stratosphere' and 'data on the propagation of radio signals from

22  stratospheric balloon-based transceivers.'  These allegations do not satisfy the Rule 8 pleading

23  requirements, as they do not even give the Court or Defendants notice of the boundaries of this

24  case."); *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, No. 23-cv-00982-CJC-KES, 2023 WL

25  6373884, at *4 (C.D. Cal. Aug. 24, 2023), *order clarified,* No. 23-cv-00982-CJC-KES, 2024 WL

26  /////

27  /////

28  /////

9

1    3081923 (C.D. Cal. Jan. 29, 2024) (collecting cases where courts found "vendors and suppliers"

2    to be insufficiently particular).  For this reason alone, plaintiff's complaint must be dismissed.[1]

3    **D.    Misappropriation**

4         The CUTSA defines "misappropriation" as, *inter alia*, the acquisition of a trade secret by

5    "improper means," which includes "theft, bribery, misrepresentation, breach or inducement of a

6    breach of a duty to maintain secrecy."  Cal. Civ. Code § 3246.1(a), (b)(1).  "'Misappropriation'

7    also means disclosure or use of a trade secret without the owner's consent."  *PEO Experts CA,*

8    *Inc. v. Engstrom*, No. 2:17-cv-00318-KJM-CKD, 2017 WL 4181130, at *5 (E.D. Cal. Sept. 21,

9    2017) (citing Cal. Civ. Code § 3246.1(b)(2)).  "Use" includes "soliciting customers through the

10   use of trade secret information."  *Id.* (citation omitted).  "Use" also includes "accelerated

11   progress" due to "access" to the trade secret.  *EchoSpan, Inc. v. Medallia, Inc.*, No. 22-cv-01732-

12   NC, 2024 WL 3431337, at *11 (N.D. Cal. July 2, 2024).

13        1.    What Was Misappropriated

14        Defendant argues that plaintiff's allegations regarding what defendant misappropriated are

15   impermissibly vague.  (Doc. No. 19-1 at 18.)  "A trade secret claim must allege facts as to . . .

16   what was misappropriated by the defendant."  *Flexpand, LLC v. CREAM, Inc.*, No. 19-cv-00878-

17   SBA, 2020 WL 13504975, at *6 (N.D. Cal. Sept. 9, 2020).  Here, plaintiff alleges in its complaint

18   that "Perimeter Solutions believes that Davis has provided Perimeter Solutions' Trade Secrets to

19   allow his new employer, Fortress, to shortcut the development process for a phosphate-based

20   aerial fire retardant system."  (Doc. No. 1 at ¶ 75.)  As discussed above, plaintiff defines

21   "Perimeter Solutions' Trade Secrets" broadly as "includ[ing] the formulations for phosphate-

---

[1]  The court notes, however, that it is unpersuaded by defendant's remaining arguments regarding the insufficiency of plaintiff's allegations to support its ownership of a trade secret.  A plaintiff is not required to affirmatively plead the difference between information publicly available in its patents and its trade secrets.  *E. & J. Gallo Winery*, 2018 WL 2463869, at *6.  Moreover, "the presence of a [non-disclosure] contract is an allegation that may support a finding of reasonable measures" to maintain secrecy, particularly at the pleading stage.  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018).  Here, plaintiff has sufficiently alleged the economic value of its purported trade secrets due to the "competitive advantage[]" these purported trade secrets allegedly provide plaintiff "in the marketplace" for aerial fire retardant government contracts.  *Tri Tool, Inc. v. Hales*, No. 22-cv-01515-DAD-KJN, 2023 WL 7130610, at *4 (E.D. Cal. Oct. 30, 2023).

1  based fire retardants, the production and blending processes, demand planning, distribution

2  channels, vendors, and suppliers from whom Perimeter Solutions purchases materials and

3  services, and the raw material specifications which are crucial to the retardant's performance[.]"

4  (Doc. No. 1 at ¶ 35.)

5        To adequately allege what was misappropriated, plaintiff's specific factual allegations

6  would need to "work in concert to provide insight into which trade secrets were used and how

7  [d]efendant used the trade secrets." *Applied Biological Lab'ys, Inc. v. Diomics Corp.*, No. 3:20-

8  cv-02500-AJB-LL, 2021 WL 4060531, at *5 (S.D. Cal. Sept. 7, 2021).  The allegations of

9  plaintiff's complaint provide no such specificity, instead appearing to assume that because

10  defendant purportedly took some unspecified shortcut when developing its phosphate-based fire

11  retardant, defendant must have made use of plaintiff's laundry list of trade secrets.  This

12  "everything-but-the-kitchen-sink assertion" regarding "the particular trade secrets that

13  [d]efendant misused" is too conclusory to sufficiently allege misappropriation. *Veronica Foods*

14  *Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) ("Here,

15  Veronica Foods' allegations of the particular trade secrets that Defendants misused are largely

16  conclusory—an everything-but-the-kitchen-sink assertion that Defendants 'have made improper

17  and unauthorized use of Veronica Foods's Customer List, Supplier List, and Confidential

18  Business Information' to solicit customers.").

19        2.    Inevitable Disclosure

20        Defendant argues that plaintiff impermissibly relies on an inevitable disclosure theory.

21  California has rejected the inevitable disclosure doctrine, under which the plaintiff proves "a

22  claim of trade secret misappropriation by demonstrating that defendant's new employment will

23  inevitably lead him to rely on the plaintiff's trade secrets." *Whyte v. Schlage Lock Co.*, 101 Cal.

24  App. 4th 1443, 1458 (2002).  Plaintiff responds by arguing that its allegations amount to an actual

25  use theory because plaintiff's complaint alleges that defendant has misappropriated plaintiff's

26  trade secrets, not that defendant will inevitably misappropriate plaintiff's trade secrets.  (Doc. No.

27  23 at 17.)

28  /////

As defendant highlights, (Doc. No. 19-1 at 21), plaintiff's complaint alleges "[o]n information and belief, Davis has used other Confidential Information and Trade Secrets of Perimeter Solutions, or it is *inevitable* that he *will* use other Confidential Information of Perimeter Solutions, as Fortress tries to find a substitute fire retardant product for its primary customer," (Doc. No. 1 at ¶ 73) (emphasis added).  The court agrees with defendant that this allegation plainly relies on the rejected inevitable disclosure doctrine.  However, the remainder of plaintiff's complaint relies on circumstantial allegations in asserting that defendant *has* misappropriated plaintiff's trade secrets to develop its latest interim-qualified product.  (*Id.* at ¶ 6.)  Such allegations do not rely on the inevitable disclosure doctrine and merit closer attention.  *Bambu Franchising, LLC v. Nguyen*, 537 F. Supp. 3d 1066, 1075 (N.D. Cal. 2021) ("Here, however, Plaintiff does not allege that there will be inevitable disclosure; Plaintiff alleges and has presented circumstantial evidence that there has already been disclosure and use of its trade secrets.").

3.    Circumstantial Allegations of Misappropriation

As noted, plaintiff relies on several circumstantial allegations in support of its claim that defendant must have used plaintiff's trade secrets to shortcut development of its phosphate-based fire retardant.  First, plaintiff alleges that Davis, a former employee of plaintiff who had access to plaintiff's trade secrets by virtue of his position with plaintiff, started working for defendant. (Doc. No. 1 at ¶¶ 37, 47.)  Second, plaintiff alleges that defendant developed a product very similar to plaintiff's very quickly.  (*Id.* at ¶ 6.)  Third, plaintiff alleges that until defendant developed its phosphate-based fire retardant, only plaintiff had managed to do so.  (*Id.* at ¶ 4.) Fourth, plaintiff alleges that after Davis joined defendant, he contacted the third-party engineer who had built plaintiff's production line.  (*Id.* at ¶¶ 40, 72.)  The court will consider each of these allegations in turn, then in combination.

a.    *Davis's Employment with Defendant*

Defendant argues that Davis's decision to pursue employment with defendant is insufficient to allege misappropriation.  (Doc. No. 19-1 at 19.)  The court agrees.  A defendant employee's "mere knowledge of [the p]laintiff's alleged trade secrets is insufficient to constitute misappropriation."  *Power Integrations, Inc. v. De Lara*, No. 20-cv-00410-MMA-MSB, 2020 WL

1467406, at *19 (S.D. Cal. Mar. 26, 2020); *Bitglass, Inc. v. Netskope, Inc.*, No. 20-cv-05216-RS, 2020 WL 11563099, at *4 (N.D. Cal. Dec. 21, 2020) (distinguishing the allegations there from the type of obviously deficient pleadings "where a plaintiff has merely alleged in conclusory terms that an ex-employee now working for a competitor had access to a whole panoply of company information and can be inferred to be using trade secrets in his or her new position"); *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. 19-cv-00220-JVS-JDE, 2019 WL 6655274, at *9 (C.D. Cal. Sept. 23, 2019) ("The allegation that Garez had knowledge of trade secret information and was then recruited to Litrinium describes a change in employment, but not wrongful conduct.").

   b.    *Development of Similar Product Quickly*

   Plaintiff also alleges that defendant developed a new phosphate-based fire retardant, the same type of fire retardant plaintiff produces, so quickly that it must have been based on plaintiff's trade secrets. (Doc. Nos. 1 at ¶¶ 6, 75; 19-1 at 23.) To substantiate this conclusion, plaintiff alleges that although defendant was founded in 2014, defendant "likely" didn't start working on its new phosphate-based fire retardant until Davis started working for defendant in early 2022. (Doc. No. 1 at ¶¶ 52, 76.)

   Defendant argues that it filed a patent application for a phosphate-based fire retardant prior to Davis commencing employment with defendant, which proves that defendant had been working on its phosphate-based fire retardant prior to Davis joining defendant. (Doc. No. 19-1 at 23–24.) Plaintiff responds by arguing that defendant's former patent application may not be the basis for defendant's current efforts, or Davis may have started working for defendant earlier than publicly announced. (Doc. No. 23 at 13 n.3, 15.) As discussed above in ruling on defendant's request for judicial notice, at the motion to dismiss stage, the court cannot interpret the patent application at issue to resolve the parties' factual dispute. *MACOM Tech. Sols.*, 2019 WL 4282906, at *7. The court therefore turns to plaintiff's allegations since "[a]t this stage of the proceedings, the party claiming trade secret misappropriation . . . must plead facts showing it is entitled to relief." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *see also id.* at 990 ("Whether [the opposing party has] produced sufficient evidence to

1  demonstrate that they independently developed their processes is irrelevant at this stage of

2  proceedings.").

3      Defendant argues plaintiff's allegation that defendant developed its product quickly is

4  conclusory and without factual basis because this allegation in turn relies on a "baseless

5  assumption" that defendant started developing its phosphate-based fire retardant at or around the

6  time Davis joined defendant.  (Doc. No. 19-1 at 25.)

7      Plaintiff's complaint alleges "[o]n information and belief, *based on the timeline for*

8  *qualifying a product* . . . , Fortress's development of its new non-magnesium chloride based

9  retardant likely started at or around the same time that Davis was hired by Fortress."  (Doc. No. 1

10  at ¶ 76) (emphasis added).  However, according to plaintiff's complaint "the timeline for

11  qualifying a product" is "long and complicated."  (*Id.* at ¶¶ 18, 76.)  Therefore, plaintiff's

12  allegation that defendant started developing its phosphate-based fire retardant at or around the

13  same time Davis was hired by Fortress, rather than earlier, is "conclusory," if not inconsistent

14  with its alleged factual basis.  *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.),

15  *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) ("The court need not,

16  however, accept as true allegations that contradict matters properly subject to judicial notice or by

17  exhibit.  [citation]  Nor is the court required to accept as true allegations that are merely

18  conclusory, unwarranted deductions of fact, or unreasonable inferences."); *see also Jones v.*

19  *Pollard*, No. 21-cv-00162-MMA-RBM, 2022 WL 706926, at *5 (S.D. Cal. Mar. 9, 2022)

20  (Generally, the court "need not accept inconsistent allegations in a complaint as true on a motion

21  to dismiss[.]") (citation omitted).

22      Plaintiff's complaint also suggests that because defendant was developing a magnesium

23  chloride fire retardant until recently, defendant must not have started developing a phosphate-

24  based fire retardant until it became clear the magnesium chloride fire retardant was unworkable.

25  (Doc. No. 1 at ¶ 52.)  However, plaintiff also appears to concede that defendant, by seeking to

26  develop a magnesium chloride fire retardant, was not precluded from simultaneously developing

27  a non-magnesium-based fire retardant.  (*Id.* at ¶¶ 61, 76) (alleging defendant started developing

28  its phosphate-based fire retardant in early 2022 and that trials of defendant's magnesium chloride

1    fire retardant continued in 2023).  Because plaintiff's complaint provides no factual basis for its

2    conclusory allegation that defendant started developing its phosphate-based fire retardant only

3    recently, plaintiff's allegation that defendant developed its phosphate-based fire retardant quickly

4    is also without factual basis.  *Sprewell,* 266 F.3d at 988.

5            All then that remains is plaintiff's allegation that defendant's new product is similar to

6    plaintiff's product by virtue of the fact that both products are phosphate-based fire retardants.

7    "[M]erely alleging similarity between two products, without more, is insufficient to support a

8    claim of misappropriation."  *E. & J. Gallo Winery*, 2018 WL 2463869, at *7.

9                              c.    *Plaintiff's Former Lack of Competition*

10           Plaintiff further alleges that until now it has been the only producer of phosphate-based

11   fire retardants due to the failure of others to develop a competing version of the product.  (Doc.

12   No. 1 at ¶ 4.)  That plaintiff enjoyed a lack of competition does not plausibly allege that no

13   competitor could ever, through independent means, develop a competing product.  Where the sole

14   producer of a product with "monopoly power" newly faces competition from a defendant

15   developing a similar product, the plaintiff "must allege facts that are not merely consistent with

16   both a theory of innocent market entry and the theory that [the d]efendant[] used [the plaintiff's

17   trade secrets], but rather tend to exclude an innocent explanation."  *Veronica Foods*, 2017 WL

18   2806706, at *14 (citation omitted); *see also Eclectic Properties E., LLC v. Marcus & Millichap

19   Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[P]laintiffs cannot offer allegations that are merely

20   consistent with their favored explanation but are also consistent with the alternative

21   explanation.").

22                             d.    *Third-Party Engineer*

23           Plaintiff next alleges that "Davis contacted the [third-party] engineer that helped design

24   [plaintiff's] production line[.]"  (Doc. No. 1 at ¶ 72.)  Defendant argues this bare allegation does

25   not amount to misappropriation because plaintiff does not allege the contents of the purported

26   conversation.  (Doc. No. 19-1 at 21.)  In its opposition, plaintiff argues that in a separate pleading

27   before a different court, plaintiff alleged that Davis asked the engineer to build a similar

28   manufacturing facility for defendant.  (Doc. No. 23 at 15.)  Once again, the court may not

1    consider factual allegations outside the plaintiff's operative complaint when ruling on a motion to

2    dismiss. *Khachatryan*, 4 F.4th at 845 (The court considers "only allegations contained in the

3    pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

4    Nevertheless, the court notes that even such an allegation would not amount to misappropriation

5    because it would not tend to exclude the innocent explanation that Davis sought the third-party

6    engineer's "general knowledge in the trade or . . . special knowledge of those persons who are

7    skilled in the trade[.]" *E. & J. Gallo Winery*, 2018 WL 2463869, at *3. Seeking out a plaintiff's

8    qualified former employee or contractor to develop "competitive products with similar features

9    does not [constitute] wrongful conduct, but instead describes a market competitor." *M/A-COM*

10   *Tech. Sols.*, 2019 WL 6655274, at *9; *see also Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D.

11   Cal. 1996) ("Allegations of similarity, without more, do not support a claim of misappropriation

12   of trade secrets.").

13                    e.    *Circumstantial Allegations Considered Together*

14          Separately insufficient circumstantial allegations may plausibly allege misappropriation

15   when considered together. *See e.g., E. & J. Gallo Winery*, 2018 WL 2463869, at *7. For

16   instance, while product similarity alone is an insufficient basis upon which to allege

17   misappropriation, where the defendant allegedly admitted in a press release that production on its

18   nearly identical product had started one year after the defendant viewed a presentation containing

19   the plaintiff's trade secrets, it was found that the plaintiff plausibly alleged that the defendant

20   misappropriated the plaintiff's trade secrets. *Id.*

21          In contrast, another district court has found that where the plaintiff alleged the defendant

22   was a competing business founded by the plaintiff's former employee, that former employee

23   recruited another former employee who had extensive knowledge of the plaintiff's trade secrets,

24   and shortly thereafter the competing business began marketing products with the same or similar

25   features as the plaintiff's products, the plaintiff had failed to allege misappropriation. *M/A-COM*

26   *Tech. Sols.*, 2019 WL 6655274, at *8. Plaintiff's allegations here are similar—that a former

27   employee of plaintiff started working for defendant, the same former employee contacted an

28   engineer who formerly worked for plaintiff, and shortly thereafter defendant obtained preliminary

                                                16

1   approval of a product similar to plaintiff's product.  (Doc. No. 1 at ¶ 6, 37, 40, 47, 72.)  In both

2   cases, plaintiff's purported circumstantial allegations of wrongful conduct "instead describe[] a

3   market competitor."  *M/A-COM Tech. Sols.*, 2019 WL 6655274, at *8 ("The allegation that

4   Litrinium did not begin marketing their products until shortly after Garez began his employment

5   there or that they developed competitive products with similar features does not allege wrongful

6   conduct, but instead describes a market competitor.").

7          Because the circumstantial allegations of plaintiff's complaint here do not tend to exclude

8   the innocent explanation—that a competitor in the fire retardant industry sought to develop a

9   phosphate-based fire retardant to compete with plaintiff and to do so recruited qualified

10  individuals for their general or specialized knowledge—plaintiff has not plausibly alleged

11  misappropriation.  *CleanFish*, 2020 WL 1274991, at *11 ("Given the risk that trade secret claims

12  can be misused for anti-competitive purposes, the Court agrees that it is appropriate for a plaintiff

13  to be required to allege facts that tend to exclude general knowledge or innocuous (*i.e.*,

14  competitive marketplace) explanations.").

15         Because plaintiff has failed to allege the purported trade secrets with sufficient

16  particularity, and because plaintiff fails to allege that defendant misappropriated plaintiff's

17  alleged trade secrets, the court will grant defendant's motion to dismiss plaintiff's claims, all

18  three of which require the plaintiff to allege ownership of a trade secret and misappropriation.

19  *Ahern Rentals*, 59 F.4th at 955; *InteliClear*, 978 F.3d at 657.  Given these grounds for dismissal,

20  the court need not address defendant's argument regarding the insufficiency of plaintiff's

21  allegations to support its claim of damages.[2]

22  /////

23  /////

24  _____

25  [2]  Nevertheless, the court draws the parties' attention to "head start" damages, which are a form of
    unjust enrichment damages that the parties did not address in the section of their briefing devoted

26  to the sufficiency of plaintiff's allegations with respect to damages.  *See EchoSpan*, 2024 WL
    3431337, at *11.  Should plaintiff opt to amend its complaint, and should defendant file a

27  subsequent motion to dismiss that amended complaint for failure to adequately plead damages,
    the court instructs the parties to address whether plaintiff's amended complaint adequately pleads

28  head start damages.

1    **E.    Leave to Amend**

2          Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

3    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

4    amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

5    Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

6    deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

7    leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

8    to amend even if no request to amend the pleading was made, unless it determines that the

9    pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

10   *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).  "Facts raised for the first

11   time in [a] plaintiff's opposition papers should be considered by the court in determining whether

12   to grant leave to amend or to dismiss with or without prejudice."  *Broam v. Bogan*, 320 F.3d

13   1023, 1026 n.2 (9th Cir. 2003).

14         Here, plaintiff has requested leave to amend if defendant's motion to dismiss is granted,

15   (Doc. No. 23 at 18–19), plaintiff's original complaint is pending before this court, (Doc. No. 1),

16   and it is possible the pleading deficiencies the court has identified in this order may be cured by

17   the allegation of additional facts, *Cook*, 911 F.2d at 247.  Accordingly, plaintiff will be granted

18   leave to amend its complaint.

19                                        **CONCLUSION**

20         For the reasons explained above,

21   1.    Defendant's request for judicial notice (Doc. No. 19-1 at 10 n.4) is GRANTED IN

22         PART;

23   2.    Defendant's motion to dismiss (Doc. No. 19) is GRANTED;

24   3.    Plaintiff's complaint (Doc. No. 1) is DISMISSED due to plaintiff's failure to state

25         a cognizable claim, with leave to amend; and

26   /////

27   /////

28   /////

4.      Plaintiff shall file its first amended complaint, or alternatively, a notice of its intent to not file a first amended complaint, within fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:   **February 18, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

19